IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2017 APR -6  P 1:18

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| DOROTHY M. THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NUMBER: |
| ) | 2:17- cv- 203 |
| ) | JURY DEMAND |
| ) | |
| RAYMOND "BUCK" RODGERS, ) | |
| individually and in his official capacity ) | |
| as Sheriff of Bullock County; BULLOCK ) | |
| COUNTY COMMISSION; RONALD ) | |
| SMITH, in his official capacity as ) | |
| Chairperson, Bullock County Commission; ) | |
| and, ALONZO ELLIS, JR., DOCK ) | |
| MCGOWAN, JAMES PERRY, and ) | |
| JOHNNY ADAMS, in their official ) | |
| capacities as Members of Bullock County ) | |
| Commission, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### I.  PRELIMINARY STATEMENT

1.      Plaintiff, a former employee of the Sheriff's Department of Bullock County, seeks declaratory and injunctive relief, compensatory and punitive damages, backpay, and frontpay from Defendants arising from Defendants' violations of her rights guaranteed to plaintiff under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, 42 U.S.C. §1981 and 42 U.S.C. §1983.

1

## II. JURISDICTION AND VENUE

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, 42 U.S.C. §1981 and 42 U.S.C. §1983.

3. Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202, the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, 42 U.S.C. §1981 and 42 U.S.C. §1983. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 U.S.C. 28 U.S.C. §§1331, 1343(4), 2001 and 2202 (declaratory judgment) and Fed. R. Civ. P Rule 57, providing for injunctive and other relief against sex discrimination and retaliation in employment.

4. This action is brought within the State where the unlawful employment practices were committed, making venue proper under 42 U.S.C. §2000e-5(f)(3).

5. The plaintiff files this suit within ninety (90) days of receipt of her Notice of Right to Sue letter from the EEOC.

## III. PARTIES

6. Plaintiff, Dorothy M. Thomas, (hereinafter "Plaintiff") is a female citizen of the United States and a resident of Banks, Pike County, Alabama. At all times relevant to this lawsuit, the plaintiff was employed with the defendants at their Union Springs, Bullock County, Alabama location. Plaintiff is a resident of this Judicial District and Division.

7. Defendant, Raymond "Buck" Rodgers (hereinafter "Sheriff Rodgers" or "Defendant"), is an employer within the meaning of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto, and as such is subject to suit under 28 U.S.C. §§1331, 1343(4), 2201 and

2

2202, the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, 42 U.S.C. §1981 and 42 U.S.C. §1983. Defendant Rodgers is sued in his individual capacity and in his official capacity as Sheriff of Bullock County.

8. Defendant, Bullock County Commission (hereinafter "BCC" or "Defendant BCC"), is an employer within the meaning of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto, and as such is an entity subject to suit under 28 U.S.C. §§1331, 1343(4), 2201 and 2202, the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, 42 U.S.C. §1981 and 42 U.S.C. §1983. Defendant BCC is sued as a necessary party for prospective equitable and injunctive relief only.

9. Defendant Ronald Smith (hereinafter "Smith") is an adult male citizen of the United States and of the State of Alabama. Defendant Smith is the Chairperson of Bullock County Commission, and is one of the individuals with final decision-making authority for Defendant BCC. Defendant Smith is being sued in his official (for prospective equitable and injunctive relief) capacity as Commission Member.

10. Defendant Alonzo Ellis, Jr. (hereinafter "Ellis") is an adult male citizen of the United States and of the State of Alabama. Defendant Ellis is a Member of Bullock County Commission, and is one of the individuals with final decision-making authority for Defendant BCC. Defendant Ellis is being sued in his official (for prospective equitable and injunctive relief) capacity as Commission Member.

11. Defendant Dock McGowan (hereinafter "McGowan") is an adult male citizen of the United States and of the State of Alabama. Defendant McGowan is a Member of Bullock County Commission, and is one of the individuals with final decision-making authority for Defendant BCC.

Defendant McGowan is being sued in his official (for prospective equitable and injunctive relief) capacity as Commission Member.

12. Defendant James Perry (hereinafter "Perry") is an adult male citizen of the United States and of the State of Alabama. Defendant Perry is a Member of Bullock County Commission, and is one of the individuals with final decision-making authority for Defendant BCC. Defendant Perry is being sued in his official (for prospective equitable and injunctive relief) capacity as Commission Member.

13. Defendant Johnny Adams (hereinafter "Adams") is an adult male citizen of the United States and of the State of Alabama. Defendant Adams is a Member of Bullock County Commission, and is one of the individuals with final decision-making authority for Defendant BCC. Defendant Adams is being sued in his official (for prospective equitable and injunctive relief) capacity as Commission Member.

14. Defendant Rodgers is doing business within this District and Division.

15. Defendants BCC, Smith, Ellis, McGowan, Perry, and Adams are doing business within this District and Division.

16. Plaintiff was an employee of Defendant Rodgers within the meaning of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.

### IV. **STATEMENT OF FACTS**
### **SEX DISCRIMINATION/HARASSMENT AND RETALIATION**

17. The plaintiff re-alleges and incorporates by reference paragraphs 1-16 with the same force and effect as if fully set out in specific detail hereinbelow.

18. Plaintiff was employed by Defendant as a Jailer in the Bullock County Jail from

4

approximately August 6, 2006, until her discriminatory termination on or about November 9, 2015.

19. Sheriff Raymond "Buck" Rodgers is the elected Sheriff of Bullock County Alabama.

20. Pursuant to Alabama state law, Sheriff Rodgers is the individual responsible for hiring and firing all employees of the Bullock County Sheriff's Department and is responsible for the daily operations of the Bullock County Jail.

21. At all relevant times, Sheriff Rodgers was Plaintiff's direct Supervisor with final decision making authority.

22. Pursuant to Alabama state law, Defendant Bullock County Commission is responsible for establishing the budget for the Bullock County Sheriff's Department and for the providing the funding for building and maintaining the Bullock County Jail.

23. Sheriff Rodgers was the employer of Plaintiff pursuant to Title VII.

24. Plaintiff's pay checks came from the payroll account of Defendant Bullock County Commission. Plaintiff was also subject to the Personnel Policies and Procedures of Bullock County, Alabama, which were approved by the Bullock County Commission.

25. Sheriff Rodgers was the individual responsible for providing Plaintiff with personnel policies, procedures, guidelines and rules.

26. Sheriff Rodgers did not provide Plaintiff with any policies on discrimination or sexual harassment during her employment.

27. Plaintiff was employed by the Bullock County Sheriff's Department on August 6, 2006, to work as a Jailer at the Bullock County Jail. Plaintiff's job duties and responsibilities included, but were not limited to, taking inmates for work release duty, transporting inmates to court and to the prison, observing inmates and insuring they were behaving appropriately, monitoring

5

cameras, and monitoring inmate activities.

28. Sheriff Rodgers was over all employees in the Sheriff's Department, and he was the plaintiff's direct supervisor.

29. During Plaintiff's employment, Sheriff Rodgers began making inappropriate sexual comments to her which created a sexually hostile work environment. Sheriff Rodgers would make sexual comments to Plaintiff, would send her text messages of a sexual nature, would ask her to meet him in isolated places, and would ask her to go out of town with him. This inappropriate sexual comments were continuous and of an ongoing nature.

30. Some of the inappropriate texts that Sheriff Rodgers sent to Plaintiff, included, but were not limited to the following messages: "Let me lick u", "if any I can do to satify u let me know", "(69), "I bet it tight, sweet an juicy", "Send a picture", "Dam . . . u good", " U. Along?", and "Dot you are a good looking woman".

31. Plaintiff tried to ignore Sheriff Rodgers' comments or not say anything to him so that he would leave her alone. However, Plaintiff was afraid to not respond to his text messages or requests to meet him because she was scared he would terminate her employment.

32. Sheriff Rodgers would come to Plaintiff's house uninvited, but she would not answer the door.

33. On several occasions, Sheriff Rodgers walked up behind Plaintiff during working hours and touched or rubbed her buttocks.

34. On several occasions, Sheriff Rodgers walked up and kissed Plaintiff on the face while she was sitting by herself in a work cubicle.

35. Sheriff Rodgers' inappropriate sexually harassing conduct was ongoing and

6

continuous during Plaintiff's employment.

36. Since Sheriff Rodgers was the ultimate decision making supervisor and was elected into his position, Plaintiff could not report his sexual harassment to anyone above him. Furthermore, Plaintiff was not aware of a written sexual harassment policy or where she could make a report of the same.

37. If Plaintiff refused to play along with his improper sexual conduct, Sheriff Rodgers would retaliate against her by blaming her for workplace issues and/or taking disciplinary actions against her.

38. There were also rumors in the workplace that Sheriff Rodgers was dating another female Jailer and this female Jailer would make up stories about the plaintiff's job performance that were not true. Plaintiff was reprimanded and disciplined as a result of these untrue allegations by this female Jailer.

39. When Plaintiff realized that Sheriff Rodgers was not going to stop his sexually harassing conduct and that it had begun to escalate, Plaintiff decided that she needed to take some action to try to stop his conduct, such as not responding or playing along with his conduct.

40. On Thursday, November 5, 2015, Sheriff Rodgers called Plaintiff and told her to meet him on County Road 61 at 7:00 p.m., and he said that he would buy her some wine coolers so they could talk. Plaintiff was off from work on November 5, 2015, and she did not go and meet Sheriff Rodgers at 7:00 p.m.

41. On the next morning, Friday, November 6, 2015, Sheriff Rodgers called Plaintiff and asked her why she did not show up to meet him the night before, and she told him that something had come up to prevent her from meeting him. Sheriff Rodgers then asked Plaintiff if she was giving

him the "run around".

42. On Friday, November 6, 2015, Plaintiff worked the day shift, which was 7:00 a.m. to 7:00 p.m.

43. Late in the day of November 6, 2015, Sheriff Rodgers came to the Jail because one of the male Jailers allegedly found an inmate in possession of contraband. Sheriff Rodgers accused Plaintiff of bringing the contraband to the inmate and she told him that she had not brought the contraband to the inmate. Sheriff Rodgers then asked the plaintiff how "mother fucking contraband keeps getting into my jail?" Plaintiff told Sheriff Rodgers that "[she] [was] not going to sleep with [him] to keep [her] job." Sheriff Rodgers told the plaintiff to "get [her] fucking shit out of his jail and to go home for 2 days without pay."

44. On Monday, November 9, 2015, Sheriff Rodgers called Plaintiff to his office and gave her a termination notice for insubordination and for cursing at him. Plaintiff told Sheriff Rodgers again that she knew what was wrong with him and that she was not going to sleep with him to keep her job.

45. Two male deputies have cursed Sheriff Rodgers and they have not been terminated.

46. Another female jailer who has not opposed Sheriff Rodgers''s sexual harassment has cursed Sheriff Rodgers and she has not been terminated.

47. Plaintiff was terminated in retaliation for refusing the sexual advances of Sheriff Rodgers and for protesting his sexually harassing conduct. Sheriff Rodgers also retaliated against Plaintiff by reprimanding her and sending her home from work for conduct that other employees, who are male or who have not opposed sexual harassment did and for which they were not reprimanded, or terminated. All of this conduct by Sheriff Rodgers was in violation of Title VII.

48. After her termination, Plaintiff attempted to use the grievance procedure established in the Personnel policies of the Bullock County Commission. Plaintiff complained about Sheriff Rodgers' sexually harassing conduct, and she asked to be returned to work. Plaintiff complained to Defendant BCC through the Commission Members.

49. Plaintiff also complained to Sheriff Rodgers about his sexually harassing conduct and asked to be returned to work.

50. No action was taken by Defendant Rodgers to correct the sexually harassing and retaliatory conduct against Plaintiff or to fully investigate Plaintiff's complaints of sexual harassment. Plaintiff's termination was upheld.

51. No action was taken by Defendant BCC to correct the sexually harassing and retaliatory conduct against Plaintiff or to fully investigate Plaintiff's complaints of sexual harassment. Plaintiff's termination was upheld.

52. Plaintiff was terminated in retaliation for making a complaint of discrimination, sexual harassment and retaliation against Sheriff Rodgers. All of this conduct by the defendants against the plaintiff was in violation of Title VII.

53. Sheriff Rodgers had no legitimate, non-discriminatory reason for his discriminatory and retaliatory treatment of the plaintiff.

54. Defendant BCC and its Members had no legitimate, non-discriminatory reason for its discriminatory and retaliatory treatment of the plaintiff.

55. Plaintiff has suffered extreme harm as a result of the defendants' willful conduct.

56. Plaintiff seeks to redress the wrongs alleged herein and this suit for injunctive and declaratory judgment is her only means of securing adequate relief. The plaintiff is now suffering

and will continue to suffer irreparable injury from the defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## V.   COUNT ONE

### SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

57.   The plaintiff re-alleges and incorporates by reference paragraphs 1-56 with the same force and effect as if fully set out in specific detail hereinbelow.

58.   In taking the above-described actions, Defendant Rodgers intentionally discriminated against Plaintiff on the basis of her gender, in violation of Title VII and §1983. Specifically, Defendant Rodgers condones and tolerates sexual harassment. Defendant Rodgers''s actions created, nurtured, tolerated, condoned, or otherwise permitted a sexually hostile environment in violation of Title VII and §1983.

59.   Defendant Rodgers' actions were taken with malice or reckless indifference to the federally-protected rights of Plaintiff.

60.   Plaintiff has been and continued to be discriminated against by Defendant Rodgers in the terms, conditions and privileges of her employment through the creation and toleration of a sexually charged and hostile work environment.

61.   Plaintiff was subjected to a sexually hostile work environment which has been authorized, ratified, encouraged and condoned by Sheriff Rodgers and the Bullock County Commission.

62.   This sexually hostile environment includes, but is not limited to, gender slurs, sexual comments, sexual harassment, gender stereotypes, inappropriate touching and other disparate treatment by which women are treated as inferior, as set out in detail above.

63. The sexually hostile environment changed, and continued to change, the terms and conditions of the employment of the Plaintiff.

64. Supervisors and/or management officials participated in, were aware of, encouraged, and/or condoned the sexually hostile work environment.

65. Defendant Rodgers failed to train the employees, including the Plaintiff, on the purported anti-discrimination and harassment policy and reporting procedures, and failed to provide Plaintiff and the employees with copies of any such harassment policies or reporting procedures.

66. Throughout her employment, Plaintiff was never provided with any anti-discrimination and harassment policy and/or reporting procedures for the same.

67. Plaintiff has been directly affected by the sexually discriminatory and harassing practices described in this Complaint.

68. Plaintiff made good faith complaints in opposition to the sexual discrimination and sexual harassment to which she was subjected.

69. As set out in detail above, in retaliation for the Plaintiff's good faith opposition to sexual harassment and sexual discrimination, Defendant Rodgers has retaliated against the Plaintiff for protesting and/or complaining about the sexually harassing and discriminatory treatment.

70. Defendant Rodgers' conduct was retaliation based, at least in part, on the Plaintiff's protected activities of opposing sexual discrimination and harassment.

71. The unlawful actions of Defendant Rodgers, as set forth above, constitute a practice, pattern, custom or policy of Defendant Rodgers and Defendant BCC for allowing acts of sexual harassment, sexual discrimination and/or retaliation in violation of its employees' federally protected rights.

72. The conduct of Defendant Rodgers was so severe or pervasive as to create a sexually hostile working environment for Plaintiff.

73. Defendant Rodgers knew, or should have known, of the sexual harassment, sexual discrimination, and the retaliation of Plaintiff.

74. Defendant Rodgers failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the sexual harassment, sexual discrimination and/or retaliation of Plaintiff.

75. The actions of Defendant Rodgers, as set out herein, violate Title VII and §1983.

76. As a result of the actions of Defendant Rodgers in violation of Title VII and §1983, Plaintiff has been and continues to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering and monetary and economic losses.

77. Plaintiff has satisfied all administrative prerequisites to bringing her Title VII claim:

A. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant on April 15, 2016, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

B. On or about December 19, 2016, Plaintiff's counsel wrote to the EEOC requesting that it stop its investigation and forward Plaintiff's charge to the U.S. Department of Justice, Civil Rights Division for issuance of the proper Notice of Right to Sue.

C. On or about January 9, 2017, the EEOC terminated its process of Plaintiff's Charge and issued a Notice of Right to Sue, which was postmarked for mailing on January 11, 2017.

D. This complaint has been filed within 90 days of Plaintiff's receipt of the notification of Right to Sue letter on her EEOC Charge.

## VI.    COUNT TWO

### GENDER DISCRIMINATION

78.    The plaintiff re-alleges and incorporates by reference paragraphs 1-77 with the same force and effect as if fully set out in specific detail hereinbelow.

79.    As set out in detail above, Defendant Rodgers intentionally and maliciously discriminated against Plaintiff on the basis of gender in violation of Title VII and §1983 by subjecting her to the sexually hostile work environment, by reprimanding her, by terminating her employment, by failing to follow BCC policies regarding the terms and conditions of her employment, and by subjecting her to stricter scrutiny than similarly situated employee not in the protected class. Defendant Rodgers intentionally violated Plaintiff's rights pursuant to Title VII and §1983.

80.    All acts of discrimination were done wilfully and with malicious and reckless disregard for the rights of Plaintiff.

81.    In taking the above-described actions, Defendant Rodgers intentionally discriminated against Plaintiff on the basis of her gender in violation of Title VII and §1983. The actions of Defendant Rodgers were taken with malice or reckless indifference to the federally protected rights of Plaintiff.

82.    As a proximate consequence of Defendant Rodgers' actions and the violation of Title VII §1983, as set out in detail above, Plaintiff has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

83.    Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant Rodgers' conduct as set forth herein unless enjoined by this Court.

84. Plaintiff has no adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, frontpay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

85. As set out in detail above, the Defendants knew, or should have known, of the sexual discrimination and condoned, ratified and otherwise allowed the racially and sexually discriminatory behavior to continue.

86. Plaintiff suffered damages as a proximate result of these violations, which were caused by Defendants' policy or custom to allow and condone sexual discrimination in deliberate indifference to rights of Plaintiff.

87. Plaintiff has satisfied all administrative prerequisites to bringing her Title VII claims:

A. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant on April 15, 2016, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

B. On or about December 19, 2016, Plaintiff's counsel wrote to the EEOC requesting that it stop its investigation and forward Plaintiff's charge to the U.S. Department of Justice, Civil Rights Division for issuance of the proper Notice of Right to Sue.

C. On or about January 9, 2017, the EEOC terminated its process of Plaintiff's Charge and issued a Notice of Right to Sue, which was postmarked for mailing on January 11, 2017.

D. This complaint has been filed within 90 days of Plaintiff's receipt of the notification of Right to Sue letter on her EEOC Charge.

88. Defendant Rodgers' conduct violates Title VII and §1983.

## VII. COUNT THREE

### RETALIATION

89. The plaintiff re-alleges and incorporates by reference paragraphs 1-88 with the same force and effect as if fully set out in specific detail hereinbelow.

90. As set out in detail above, Plaintiff has been intentionally discriminated against and retaliated against in violation of Title VII and §1983 by Defendant Rodgers for protesting and sexual discrimination and harassment.

91. In taking the above-described actions, Defendant Rodgers intentionally discriminated against and retaliated against Plaintiff for protesting against sexual discrimination and harassment. Employees who have not opposed discrimination or harassment have not been treated in a similar manner as Plaintiff. The actions of Defendant Rodgers were taken with malice or reckless indifference to the federally protected rights of Plaintiff.

92. Plaintiff complained about the retaliatory actions and Defendants failed to take corrective actions to prevent the retaliation. Defendant Rodgers' actions were in violation of Title VII and §1983.

93. As a proximate consequence of Defendant Rodgers' actions and the violation of Title VII and §1983, Plaintiff has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

94. The retaliation against Plaintiff was ongoing and of a continuous nature.

95. Plaintiff has satisfied all administrative prerequisites to bringing her Title VII claim:

A. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant on April 15, 2016, which was filed within

15

180 days of the commission of the unlawful employment practices alleged herein.

B. On or about December 19, 2016, Plaintiff's counsel wrote to the EEOC requesting that it stop its investigation and forward Plaintiff's charge to the U.S. Department of Justice, Civil Rights Division for issuance of the proper Notice of Right to Sue.

C. On or about January 9, 2017, the EEOC terminated its process of Plaintiff's Charge and issued a Notice of Right to Sue, which was postmarked for mailing on January 11, 2017.

D. This complaint has been filed within 90 days of Plaintiff's receipt of the notification of Right to Sue letter on her EEOC Charge.

## VIII. PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendants are violative of the rights of the plaintiff as by Title VII and the amendments thereto, 42 U.S.C. §1981 and 42 U.S.C. §1983.

2. Grant plaintiff a permanent injunction enjoining the defendants, its agents, successors, employees, attorneys and those acting in concert with the defendants and at the defendants' request from engaging in discriminatory and retaliatory employment practices.

3. Grant Plaintiff reinstatement to her position from which she was retaliatorily and discriminatorily terminated.

3. Grant Plaintiff the appropriate amounts of backpay, interest, benefits, damages, a pay raise with backpay in the amount she would have earned but for the unlawful and discriminatory practices of defendants, and reinstatement to the job position from which she was discriminatorily


terminated, or in the alternative, frontpay.

4. Grant Plaintiff an award of compensatory damages and punitive damages (§ 1983 claims), including but not limited to an award for mental anguish and emotional distress.

5. Award Plaintiff her costs and expenses, including an award of reasonable attorneys' fees.

6. Award Plaintiff such other relief and benefits as the cause of justice may require or as may be appropriate.

Respectfully submitted,

/s/ Candis A. McGowan
Candis A. McGowan
Lacey K. Danley
Counsel for Plaintiff

OF COUNSEL:

WIGGINS, CHILDS, PANTAZIS,
    FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

/s/ Candis A. McGowan
Candis A. McGowan

## DEFENDANT'S ADDRESS:

### To Be Served by Certified Mail:

Sheriff Raymond "Buck" Rodgers
217 North Prairie Street, Room 112
Union Springs, Alabama 36089

Bullock County Commission
110 Hardaway Avenue West
Union Springs, Alabama 36089

### COMMISSIONERS:

Ronald Smith, Chairperson
PO Box 472
Union Springs, Alabama 36089

Alonzo Ellis, Jr.
PO Box 472
Union Springs, Alabama 36089

Dock McGowan
PO Box 472
Union Springs, Alabama 36089

James Perry
PO Box 472
Union Springs, Alabama 36089

Johnny Adams
PO Box 472
Union Springs, Alabama 36089